**HOLMES, TAYLOR, COWAN & JONES LLP**
Joel Athey (SBN: 214399)
joel.athey@holmestaylor.com
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017
Tel: (213) 985-2200
Fax: (213) 973-6282

Attorneys for Plaintiff
STEPHEN BUSCHER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSCHER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DOUGLAS EDELMAN, an individual, and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO: 2:20-cv-09680-JVS-AFM<br><br>The Honorable James V. Selna<br><br>**DECLARATION OF STEPHEN BUSCHER FILED IN SUPPORT OF PLAINTIFF'S OPPOSITIONS TO DEFENDANT'S MOTIONS TO DISMISS COMPLAINT FOR (1) LACK OF PERSONAL JURISDICTION AND (2) LACK OF SUBJECT MATTER JURISDICTION** |

**DECLARATION OF STEPHEN BUSCHER**

I, STEPHEN BUSCHER, hereby declare and state as follows:

1. I am over the age of 18, have personal knowledge of the facts stated in this declaration and, if called as a witness, can and will testify competently thereto.

2. I am the Plaintiff in the above-captioned lawsuit. I prepared this declaration in support of my opposition to Defendant Edelman's motions to dismiss the lawsuit on the basis of subject matter jurisdiction (pursuant to Federal Rule of Civil Procedure 12(b)(1)) and personal jurisdiction (pursuant to Federal Rule of Civil Procedure 12(b)(2)).

3. In or about April 2012, I was engaged in a series of email, telephonic, and in-person discussions with Defendant Douglas Edelman about becoming business partners. Defendant Edelman asked me to meet with him in Los Angeles, California to continue our discussions and negotiations about becoming business partners.

4. I first flew to Los Angeles, California, to meet with Defendant Edelman and to discuss our partnership on or about April 30, 2012. It was during that first meeting that Defendant Edelman said he wanted me to: (i) quit my jobs at Sistema OJSC and Navitas Global Resources, Ltd.; (ii) work exclusively with Defendant Edelman to develop business opportunities in the oil & gas industry; and (iii) split the profits from our business ventures on a 50-50 basis. At the end of our first set of meetings in Los Angeles, California, Defendant Edelman suggested that I return to Los Angeles, California, the following week for further discussions about our Joint Partnership (as that term is described at ¶ 83 of the Complaint).

5. The following week, Defendant Edelman paid for my hotel to come to Los Angeles, California, to meet Defendant Edelman for a second round of meetings.

6. During these second set of meetings, Defendant Edelman and I met over the course of two days in Los Angeles, California, from May 8 to May 9, 2012.

During those meetings, we discussed the specifics of entering into a contract that is described more fully in the Complaint as the Joint Partnership Agreement.

7. Jennifer Hall and Erlend Olsen were present for certain portions of the meeting on May 9, 2012, when Defendant Edelman and I finalized our negotiations about the terms of the Joint Partnership Agreement and our contractual obligations to each other.

8. At the conclusion of our meeting on May 9, 2012, Defendant Edelman and I had formally entered into the Joint Partnership Agreement.

9. After we entered into the Joint Partnership Agreement in May 2012, Defendant Edelman asked me to set up an office to be used for the Joint Partnership, to be located in Newport Beach, California. Defendant Edelman also agreed the Joint Partnership would hire Erlend Olson to work for it. In fact, it is for this reason that Mr. Olson was at certain portions of the meetings between Defendant Edelman and me in May 2012, during which we entered into the Joint Partnership Agreement.

10. Because Mr. Olson lived near Newport Beach, California, it made sense to set up the Joint Partnership's office there. Defendant Edelman asked me to sign a lease for an office space in Newport Beach, California, which I did, through an agent acting on my behalf, in or about November 2012. That office space was used by the Joint Partnership in Newport Beach, California, between approximately November 2012 and December 2013.

11. Mr. Olson worked for the Joint Partnership for approximately 18 months while he lived in California. Defendant Edelman paid Mr. Olson, either as an employee of, or consultant to, our Joint Partnership while Mr. Olson lived in California.

12. Defendant Edelman has owned a film production company called Atlantic Screen Productions ("ASP"), formerly known as Story First Productions ("SFP"), from at least 2014 to the present. Defendant Edelman personally told me that he owns ASP on many occasions.

13. ASP has an office address in London, United Kingdom. I have visited the ASP offices in London on many occasions over the years, and seen Defendant Edelman's office at ASP. ASP shares the same office space that leased by Defendant, and held in the name of Defendant's company, Conduit Business Solutions, which is also the company that caused my Living Expenses Advance (as that term is defined in ¶ 84 of the Complaint) to be paid from 2012 until December 2018.

14. SFP/ASP also has employees and/or affiliates located in Los Angeles, California. One of those employees is Larry Mortorff, who is an attorney by training (and upon information and belief is still licensed and actively practicing law in California), but also a film producer. Mr. Mortorff has worked for Defendant Edelman since at least 2012, and is paid by Defendant Edelman for his work, which is performed in California for SFP/ASP. Mr. Mortorff is listed on ASP's website as its current Head of Legal & Business Affairs. Attached hereto as Exhibit A is a November 5, 2014 email exchange between me and Larry Mortorff. Mr. Mortorff says that he is "working to get [SFP] into business with serious companies and projects … will need a bit more infrastructure here [in Los Angeles]." I wrote back to Mr. Mortorff saying that I had spoken to Defendant Edelman who agreed that Mr. Mortorff needed to be formally named President of Story First Productions and given a bigger budget to show that SFP has "a serious LA presence."

15. Defendant Edelman employs a producer named Jon Turtle to work with SFP/ASP. Mr. Turtle is listed on ASP's website as its current Executive Producer. Upon information and belief, Mr. Turtle lives and works in Los Angeles, California while performing his work for SFP/ASP.

16. Defendant Edelman employed Peter Gerwe as a consultant to work with SFP/ASP. Mr. Gerwe, who had a residence in California, performed his work for Defendant Edelman's film production companies while frequently in California from 2014 to 2015.

17. ASP's website states that it has a partnership with Aftershock Comics to produce a series of comic book titles. Upon information and belief, Aftershock Comics is located on Ventura Blvd. in Los Angeles, CA.

18. For a time, Defendant used the office space that was leased by the Joint Partnership in Newport Beach, California, as a base from which to launch our Joint Partnership businesses and his SFP/ASP film production company.

19. Defendant Edelman asked me to serve as the Chief Financial Officer of SFP from 2014 to 2015. Consequently, I have personal knowledge of the fact that SFP conducted operations and had employees working for it in California.

20. Defendant Edelman traveled to California to meet with Messrs. Mortorff, Gerwe, Turtle, and others, and to engage in the activities of SFP/ASP, the film production company that he owns. I accompanied Defendant Edelman on at least one such trip, during which Defendant Edelman viewed office space that he was considering leasing in Burbank, California.

21. I am aware of the fact that Defendant Edelman had a valid California driver's license at least sometime in the last few years. I have been present and personally witnessed Defendant Edelman use his California driver's license when renting a car. And upon information and belief, it is my understanding that Defendant Edelman used his California driver's license as a form of identification on at least one occasion when traveling from Mexico into California.

///
///
///
///
///
///
///
///

-4-
Declaration of Stephen Buscher

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed on January 18, 2021, at Albuquerque, New Mexico

_____
Stephen Buscher

-5-
Declaration of Stephen Buscher