Perrie M. Weiner (SBN 134146)
perrie.weiner@bakermckenzie.com
Barry J. Thompson (SBN 150349)
barry.thompson@bakermckenzie.com
Aaron T. Goodman (SBN 330791)
aaron.goodman@bakermckenzie.com
**BAKER MCKENZIE LLP**
10250 Constellation Blvd, Suite 1850
Los Angeles, California 90067
Telephone: +1 310 201 4728
Facsimile: +1 310 201 4721

Attorneys for Defendant
Douglas Edelman

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSCHER, an Individual,<br><br>                    Plaintiff,<br><br>        v.<br><br>DOUGLAS EDELMAN, an individual, and DOES 1-50, inclusive,<br><br>                    Defendants. | Case No. 2:20-cv-09680-JVS-AFM<br><br>**REPLY IN SUPPORT OF DEFENDANT DOUGLAS EDELMAN'S MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**<br><br>Date:   February 15, 2021<br>Time:  1:30 p.m.<br>Place:  Courtroom 10C<br>Judge: Hon. James Selna<br><br>Complaint Filed: October 21, 2020 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................. 1

II.  ARGUMENT ................................................................................................... 4

   A.   The Court Should Disregard The Hearsay Statements In Plaintiff's Self-Serving Declarations ................................................................. 4

   B.   The Court Lacks General Jurisdiction Over Mr. Edelman ...................... 5

      1.   Plaintiff Fails To Establish That Edelman Currently Has Any Physical Presence In California ............................................. 6

      2.   Plaintiff Offers Zero Evidence That Edelman Intends To "Remain" In California ...................................................... 9

      3.   Plaintiff Cannot Demonstrate General Jurisdiction Under the "Continuous And Systematic" Standard Applicable To Corporations ...................................................................... 10

   C.   Plaintiff Effectively Concedes There Is No Specific Jurisdiction Over His Tort And UCL Claims ......................................................... 11

   D.   Plaintiff Fails To Satisfy His Burden Of Demonstrating There Is Specific Jurisdiction Over His Contract Claims ................................ 12

      1.   Under Burger King, The Court Must Examine The "Business Reality"  Behind The Parties' Agreement, Not Merely Where The Parties  "Negotiated" The Agreement ........................... 12

      2.   The Parties' Alleged Contractual Relationship, Ongoing Contractual Performance, And Course Of Dealing All Occurred Outside Of California ............................................ 14

      3.   The Alleged Negotiation Occurred In California Based On The Happenstance Of Where Edelman's Brother -- An Unrelated Third Party -- Was Located ...................................... 15

      4.   Unconnected Business Activities Are Entitled To No Weight In The Specific Jurisdiction Analysis ................................... 17

      5.   Plaintiff's Claims Do Not Arise Out Of Forum Activity ............... 18

      6.   It Would Be Unreasonable To Force Mr. Edelman To Litigate In California ........................................................ 19

III. JURISDICTIONAL DISCOVERY IS UNWARRANTED ............................... 20

IV.  CONCLUSION .............................................................................................. 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Lubricants Co. v. Terry*,
  No. 11-1284, 2012 U.S. Dist. LEXIS 46320 (E.D. Cal. Apr. 2, 2012)................. 12

*Bancroft & Masters, Inc. v. Augusta Nat'l*
  223 F.3d 1082 (9th Cir. 2000) ................................................................... 24

*Barone v. Intercontinental Hotels Grp. PLC*,
  2016 U.S. Dist. LEXIS 66851 (N.D. Cal. May 20, 2016)..................................... 23

*Bauman v. DaimlerChrysler Corp.*,
  644 F.3d 909 (9th Cir. 2011), *rev'd on other grounds*, 571 U.S. 117 (2014) ....... 11

*BNSF Railway v. Tyrrell*,
  137 S. Ct. 1549 (2017)............................................................................ 15, 16

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) ................................................................. 17, 25

*Bowen v. Lancaster*,
  2008 U.S. Dist. LEXIS 39423 (C.D. Cal. Apr. 30, 2008)................................... 20

*Bristol-Meyers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017)................................................................... 11, 17, 22

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016) ................................................................... 10

*Burger King v. Rudzewicz*,
  471 U.S. 462 (1985)...................................................................... 17, 18, 22

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
  788 F.2d 535 (9th Cir. 1986) ................................................................. 25

*Consulting Engineers Corp. v. Geometric Ltd.*,
  561 F.3d 273 (4th Cir. 2009) ................................................................. 20

*Daimler AG v. Bauman*,
  571 U.S. 117 ................................................................... 10, 14, 15

*Farber v. Tennant Truck Lines, Inc.*,
    84 F. Supp. 3d 421 (E.D. Pa. 2015) ........................................................................ 10

*Ferrari v. Mercedes Benz USA, LLC*,
    17-cv-018, 2017 U.S. Dist. LEXIS 114271 (N.D. Cal. Jul. 21, 2017) .................... 9

*Getz v. Boeing Co.*,
    654 F.3d 852 (9th Cir. 2011) .................................................................................. 25

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
    972 F.3d 1101 (9th Cir. 2020) .......................................................................... 18, 19

*Greene v. Doruff*,
    660 F.3d 975 (7th Cir. 2011) .................................................................................. 23

*Helicopteros Nacionales de Columbia v. Hall*,
    466 U.S. 408 (1984) ................................................................................................ 10

*Kanter v. Warner--Lambert Co.*,
    265 F.3d 853 (9th Cir. 2001) .................................................................................. 13

*Klinghoffer v. S.N.C. Achille Lauro*,
    937 F.2d 44 (2d Cir. 1991) ..................................................................................... 12

*Kroeger v. Vertex Aero LLC*,
    No. CV 20-3030-JFW(AGRX), 2020 U.S. Dist. LEXIS 117323
    (C.D. Cal. June 30, 2020) ................................................................................ 16, 17

*Lavinia Aircraft Leasing, LLC v. Piper Aircraft Inc.*,
    16-cv-2849, 2017 U.S. Dist. LEXIS 55238 (D. Ariz. 2017) .................................... 9

*Lew v. Moss*,
    797 F.2d 747 (9th Cir. 1986) .................................................................................. 14

*Lezlie J. Gunn v. Hans-Peter Wild & Does 1-10*,
    2020 U.S. Dist. LEXIS 161081 (C.D. Cal. June 11, 2020) (Selna, J.) .................. 14

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) .................................................................................. 19

*Mississippi Band of Choctaw Indians v. Holyfield*,
    490 U.S. 30 (1989) .................................................................................................. 11

*Mitan v. Feeney*,
    497 F. Supp. 2d 1113 (C.D. Cal. 2007) .................................................................... 9

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT
FOR LACK OF PERSONAL MATTER JURISDICTION

*Moncrief Oil Int'l, Inc. v. OAO Gazprom*,
  481 F.3d 309 (5th Cir. 2007) ................................................................ 20

*Mondragon v. Capital One Auto Fin.*,
  736 F.3d 880 (9th Cir. 2013) ............................................................... 12

*Monkton Ins. Servs., Ltd. v. Ritter*,
  768 F.3d 429 (5th Cir. 2014) ............................................................... 10

*Morrill v. Scott Financial Corp.*,
  873 F.3d 1136 (9th Cir. 2017) ............................................................. 21

*OOO Brunswick Rail Management v. Sultanov*,
  17-cv-017, U.S. Dist. LEXIS 86882 (N.D. Cal. 2017) ............................ 9

*Philadelphia Prof'l Collections, LLC v. Young*,
  2010 U.S. Dist. LEXIS 136194 (E.D. Pa. 2010) .................................... 12

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) ........................................................ *passim*

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ............................................................. 10

*Reynolds v. Binance Holdings Ltd.*,
  -- F. Supp. 3d --, 2020 U.S. Dist. LEXIS 155227 (N.D. Cal. Aug. 26, 2020) ...... 26

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007) ............................................................................. 23

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ..................................................... 9, 12, 23

*Skanda Grp. of Indus., LLC v. Capital Health Partner, LLC*,
  2020 U.S. Dist. LEXIS 240314 (C.D. Cal. Dec. 21, 2020) ..................... 19

*Smartstop Self Storage Operating P'ship L.P. v. Can-Dev, ULC*,
  2015 U.S. Dist. LEXIS 189631 (C.D. Cal. Oct. 26, 2015) ..................... 20

*Steel v. U.S.*,
  813 F.2d 1545 (9th Cir. 1987) ............................................................. 12

*Voodoo SAS v. SayGames LLC*,
  19-cv-7480, 2020 U.S. Dist. LEXIS 121879 (N.D. Cal. 2020) ................. 9

iv

*Walden v. Fiore*,
    571 U.S. 277 (2014)................................................................ *passim*

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*,
    704 F.3d 668 (9th Cir. 2012) ...................................................... 17

*Waziri v. Waziri*,
    No. 15-CV-04822-JSC, 2016 U.S. Dist. LEXIS 7837 (N.D. Cal. Jan. 22, 2016)  16

*Yamashita v. LG Chem, Ltd*.,
    No. 20-cv-00129, 2020 U.S. Dist. LEXIS 136825 (D. Haw. July 31, 2020).. 25, 26

*Youn Kyung Park . v. Holder*,
    572 F.3d 619 (9th Cir. 2009) ...................................................... 14

*Zackaria v. Wal-Mart Stores, Inc.*,
    11-cv-1418, 2011 U.S. Dist. LEXIS 142657 (C.D. Cal. 2011)............................ 9

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT
FOR LACK OF PERSONAL MATTER JURISDICTION

Defendant Douglas Edelman ("Edelman") submits this Reply in support of his Motion to Dismiss the Complaint of Plaintiff Stephen Buscher ("Plaintiff" or "Buscher") for lack of personal jurisdiction.

# I.    INTRODUCTION

Plaintiff's opposition brief is laced with scurrilous insinuations regarding Mr. Edelman, but efforts at character assassination cannot change the basic fact that this case has nothing to do with California. Plaintiff is domiciled in Florida. Mr. Edelman, according to Plaintiff's own proof of service, "resides in London." Plaintiff's claims arise out of a purported joint venture to develop oil and gas opportunities in Mexico, Europe, Canada, and Nevada (the "Alleged Joint Venture") using various Mexican, British Virgin Islands, and European entities. To the extent there is any claim to be adjudicated, it belongs elsewhere. Plaintiff previously filed an action in the Netherlands with parallel on-going litigation -- which, according to Plaintiff, already issued relief to Plaintiff that is duplicative of the relief Plaintiff seeks here -- and Plaintiff more recently filed an action in New York, tacitly admitting that jurisdiction in California does not exist, seeking essentially the same relief.

The materials filed by Plaintiff with his opposition only underscore the conclusion that jurisdiction does not lie in California. Plaintiff alleges he first met Mr. Edelman in 1995 in Russia, that the two purchased property together in Austria, and that, while they were in Europe, Mr. Edelman began to pitch to Plaintiff various business ventures, eventually coalescing and culminating into the Alleged Joint Venture. The parties thereafter, allegedly, met in person for a few days to negotiate an oral agreement in restaurants and hotel bars. Those "negotiations" happened to take place in California, but only because Mr. Edelman was already there to visit his dying brother. No aspect of the Alleged Joint Venture's operations has any relevant nexus to this state.

Indeed, none of the various entities formed by the parties in connection with the Alleged Joint Venture is based in California nor organized under the laws of California.

One of those entities, according to Plaintiff's New York action, is subject to jurisdiction in New York and governed by the laws of New York. Further, neither party performed or breached any "term" of the alleged oral agreement pertinent to this dispute in California. To perform his duties under the Alleged Joint Venture, Plaintiff lived in Utah and Mexico, and traveled repeatedly to Europe. Mr. Edelman's purported breaches and other wrongdoing took place in Europe. Plaintiff seeks as damages equity and profit distribution in foreign companies, subject to foreign laws and (according to Plaintiff) at least one existing foreign court judgment. To the extent there is any claim to be adjudicated, it certainly does not belong in the Central District of California.

Plaintiff's argument for personal jurisdiction is premised on the slenderest of reeds. Mr. Edelman, as Plaintiff concedes, has not lived in the United States for decades. Because Mr. Edelman does not live in California, Plaintiff served him at "The Windmill Pub and Restaurant" in London, Dkt. No. 11-1 at 1, and (again according to Plaintiff's own service papers) Mr. Edelman lives in a London home. Dkt. No. 11-1 at 4. Despite having zero physical presence in or recent connection with California, Plaintiff contends there is general jurisdiction over Mr. Edelman based on alleged connections that predate the parties' dispute by many years, and sometimes even decades. For instance, Plaintiff contends Mr. Edelman is subject to general jurisdiction in California -- and thus can be sued for any claim regardless of whether it has anything to do with California -- because Mr. Edelman was born and raised in California. Plaintiff's limitless view of general jurisdiction has no basis in the law.

Plaintiff further resorts to the hearsay testimony of an unlicensed "private investigator." This testimony purports to describe the contents of "public record searches," conducted by unidentified individuals that suggest California purportedly issued a tax lien against Mr. Edelman in 1993, and that Mr. Edelman had a driver's license that expired several years ago. Even assuming the truth of these alleged facts -- and they are entitled to no such deference -- they are irrelevant because they do not

evidence where Mr. Edelman currently resides. Plaintiff also argues that Mr. Edelman must affirmatively prove he is not domiciled in California. But it is not the defendant's burden to prove the absence of jurisdiction; rather, it is a bedrock principle that Plaintiff bears the burden of proof.

Plaintiff's arguments in support of specific jurisdiction fare no better. Plaintiff does not even address -- and thereby concedes -- the purposeful direction test to which his tort and UCL claims are subject. As for his contract-based claims, Plaintiff attempts to demonstrate purposeful availment based on a few days of alleged "negotiations" and purported business operations of the Alleged Joint Venture that supposedly took place in California. But neither suffices.

For contract-based claims, the Supreme Court directs courts to examine the economic reality of the parties' business relationship, not simply where the contract was negotiated and executed. And here, all relevant aspects of the parties' relationship -- where they met, where they discussed potential business ventures, where they performed the Alleged Joint Venture, where the alleged breaches occurred, and where the alleged damages occurred and were felt -- all took place outside of California, primarily in Europe, and involve European and British Virgin Island entities. With respect to purported business operations performed in California, none have anything to do with this dispute. Indeed, they are so irrelevant -- even to Plaintiff -- that he does not mention them once in the Complaint. In essence, Plaintiff attempts to manufacture a hybrid form of personal jurisdiction where remote-in-time general contacts with the forum state, unrelated to the claims at issue, are used to backfill insufficiencies in case-specific contacts. But the Supreme Court has barred this precise tactic.

This is simply not enough to support personal jurisdiction over Mr. Edelman and Plaintiff's Complaint should, respectfully, be dismissed.

## II.   ARGUMENT

### A.   The Court Should Disregard The Hearsay Statements In Plaintiff's Self-Serving Declarations

As an initial matter, and as set forth in the concurrently-filed evidentiary objections, the Court should disregard the hearsay statements in the declarations Plaintiff submitted.

Plaintiff bears the burden of proving the existence of personal jurisdiction over each Defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). To survive a motion to dismiss, Plaintiff is required to "make a prima facie showing that personal jurisdiction exists." *OOO Brunswick Rail Management v. Sultanov*, 17-cv-017, U.S. Dist. LEXIS 86882, at *2 (N.D. Cal. 2017). While district courts have broad discretion in deciding what materials to consider when evaluating a plaintiff's prima facie case, courts should require that a prima facie showing be based on admissible evidence. *See Lavinia Aircraft Leasing, LLC v. Piper Aircraft Inc.*, 16-cv-2849, 2017 U.S. Dist. LEXIS 55238, at *8-9 (D. Ariz. 2017) (collecting cases); *Voodoo SAS v. SayGames LLC*, 19-cv-7480, 2020 U.S. Dist. LEXIS 121879, at *4 (N.D. Cal. 2020) ("Such evidence must be admissible.").

For that reason, courts in the Ninth Circuit generally strike or otherwise refuse to consider hearsay statements offered in support of a plaintiff's prima facie case. *See, e.g., Ferrari v. Mercedes Benz USA, LLC*, 17-cv-018, 2017 U.S. Dist. LEXIS 114271, at *3 n.2 (N.D. Cal. Jul. 21, 2017) (dismissing for lack of jurisdiction and finding declaration inadmissible as, inter alia, "replete with hearsay"); *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1118 n.4 (C.D. Cal. 2007) (refusing to consider document offered in support of jurisdiction where it was "not authenticated, contain[ed] hearsay statements, and lack[ed] a sufficient foundation."); *cf. Zackaria v. Wal-Mart Stores, Inc.*, 11-cv-1418, 2011 U.S. Dist. LEXIS 142657, at *8 (C.D. Cal. 2011) (remanding for lack of subject matter jurisdiction and discounting declarations as hearsay).

As set forth in Mr. Edelman's concurrently-filed objections, the Hall and Brunon declarations (Dkt. Nos. 23-3, 23-4, 24-3) are replete with hearsay statements. Even more, the declaration submitted by Plaintiff's purported "private investigator," Ms. Brunon, which purports to describe "public record searches" conducted by unnamed individuals, is laden with not just hearsay, but lacks foundation, violates the best evidence rule, and is irrelevant. Plaintiff suggests that the Court should simply take Ms. Brunon's hearsay testimony at her word because she is a "private investigator," but Ms. Brunon did not conduct the "public record searches" she purports to describe, and does not even state whether she is a licensed private investigator in the first place. All of her testimony should be disregarded.

## B.  The Court Lacks General Jurisdiction Over Mr. Edelman

General jurisdiction "requires affiliations so continuous and systematic" as to render the defendant essentially "at home" in the forum State. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015); *see Daimler AG v. Bauman*, 571 U.S. 117, 122 2014). General jurisdiction permits a court to hear "'any and all claims' against a defendant, whether or not the conduct at issue has any connection to the forum." *Ranza*, 793 F.3d at 1068 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Thus, general jurisdiction is subject to an "exacting standard." *Ranza*, 793 F.3d at 1069; *see also Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 (1984) ("The level of contacts with the forum state necessary to establish general jurisdiction is *quite high*.") (emphasis added). Indeed, Courts have recognized that, following the Supreme Court's most recent decisions, it is "incredibly difficult" to establish general jurisdiction. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (same); *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 433 (E.D. Pa. 2015) (explaining that it remains unclear under Supreme Court precedent whether a state may even exercise general jurisdiction over a nonresident individual defendant).

Following the Supreme Court's most recent precedents, the "paradigm forum" under this "incredibly difficult" standard is the individual's domicile. *See Bristol-Myers Squibb*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations*, 564 U.S. at 924). Domicile is established by two elements: (1) "physical presence;" and (2) "intent to remain there." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). Plaintiff offers no evidence in support of either element.

>    1.    *Plaintiff Fails To Establish That Edelman Currently Has Any Physical Presence In California*

Plaintiff cannot possibly satisfy the physical presence factor because, as Plaintiff concedes, Edelman lives outside of the United States (Compl. ¶ 12), and has lived outside of the United States for **at least** approximately the past 25 years. *Id*. ¶ 2. Indeed, according to Plaintiff's own proof of service and accompanying papers, Mr. Edelman "resides in London" at his London residence and, presumably for that reason, Plaintiff served Mr. Edelman the Complaint in London. *See* Dkt. No. 11-1 at 2. Plaintiff reconfirms this understanding in the New York action, where he alleges that Mr. Edelman "presently resides in London, England." *See Buscher v. Sirius Energy S.A. DE C.V., et al.,* Index No. 650107/2021 (New York Compl. ¶ 13). Plaintiff also recognizes that Mr. Edelman has not lived in any state in the United States for the better part of three decades. *See* Compl. ¶¶ 17, 22, 24, 37 ("Edelman has lived abroad since at least the early 1990s, in Russia, Kyrgyzstan, London (United Kingdom), Portugal, and Ibiza (Spain).").

Because it is undisputed that Edelman has no current or even recent physical presence in California, Plaintiff fixates on alleged contacts that predate the filing of the Complaint by many years. As a threshold matter, general jurisdiction is tested as of the time the complaint is filed. *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 913 n.7 (9th Cir. 2011), *rev'd on other grounds*, 571 U.S. 117 (2014). Thus, "[o]nly contacts occurring within a reasonable period of time prior to the filing of this action

are relevant to this Court's general jurisdiction inquiry." *Philadelphia Prof'l Collections, LLC v. Young*, 2010 U.S. Dist. LEXIS 136194, at *13-14 (E.D. Pa. 2010); *see also Steel v. U.S.*, 813 F.2d 1545, 1549 (9th Cir. 1987) ("Mindful that the Due Process Clause requires that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign, courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction."); *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir. 1991) ("personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed"). *Am. Lubricants Co. v. Terry*, No. 11-1284, 2012 U.S. Dist. LEXIS 46320, at *16-17 (E.D. Cal. Apr. 2, 2012) (finding no jurisdiction even though defendant formerly lived in California). Accordingly, what counts is where Mr. Edelman resided at the time this lawsuit was filed, in late 2020, not where he grew up or might have resided at some distant time in the past.

Plaintiff argues that he may use stale California connections to invoke the presumption of continuing domicile. Under that presumption, Plaintiff asserts that a person's last known domicile remains their domicile until and "unless rebutted with sufficient evidence of change." *See* Opp. at 15. Plaintiff is wrong. First, this presumption applies when a party has "the burden of proving citizenship" for purposes of diversity of citizenship. *See Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013). Plaintiff cites no case law applying this burden-shifting scheme to the general jurisdiction analysis. Indeed, such a burden shift would be logically incoherent under the personal jurisdiction analysis, because the party asserting personal jurisdiction always has the burden of demonstrating it. *Schwarzenegger*, 374 F.3d at 802.

Second, the presumption is inapplicable in any event because Plaintiff has not established that Edelman is presently domiciled in California. *See id.* (presumption provides that, "***once established***, a person's state of domicile continues unless rebutted

7

with sufficient evidence of change" (emphasis added)). Indeed, Plaintiff offers no evidence or argument to suggest that Edelman was domiciled in California even two decades before the Complaint was filed, much less any conceivably reasonable time period within the recent past.

Even if the Court were to consider alleged contacts predating the dispute by years -- and it should not -- they are completely irrelevant. Plaintiff contends that Edelman: (i) was born and raised in California; (ii) has siblings in California; (iii) had last "owned" a known permanent residence in California; (iv) was subject to a tax lien by the State of California nearly 30 years ago; and (v) had a California driver's license issued to him in 2007, and which expired in 2017. None of these alleged facts occurred anywhere close to the time this action was filed, in late 2020. The only "facts" Plaintiff proffers that took place within the past decade is a long-expired driver's license. But, if anything, an expired license supports Mr. Edelman's position that he does not reside in California and has no intention to reside there in the future. Nor does Plaintiff cite any authority requiring that, to be eligible for a California driver's license, an individual must be ***domiciled*** in California. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (noting distinction between domicile and residence). None of Plaintiff's purported facts, even taken together, suffice to establish a current, or even recent, "physical presence" in California.

Plaintiff's domicile arguments turn the personal jurisdiction analysis on its head. Under Plaintiff's argument, there would be no need to demonstrate specific jurisdiction for a wide swath of cases. Rather, any adult who was ever born and raised in California -- and thus likely had siblings and at some point paid taxes and had an expired California driver's license -- could be haled into court and subject to general jurisdiction in this district for claims having nothing to do with California whatsoever. Defendants would then need to bear the substantial expense and burden of retaining counsel and affirmatively adducing evidence to "prove the negative" that they do not reside in California and have no intention to do so. The Court should reject this far-

8

reaching view of general jurisdiction, which is entirely at odds with modern Supreme Court jurisprudence. *See Daimler*, 571 U.S. at 128 (noting that general jurisdiction now plays a "reduced role" as the "Court has increasingly trained [its attention] on the 'relationship among the defendant, the forum, and the litigation' " (i.e., "specific jurisdiction").

> ### 2. Plaintiff Offers Zero Evidence That Edelman Intends To "Remain" In California

Plaintiff also fails to adduce evidence as to the second element of domicile -- that Mr. Edelman intends "to remain [in California] permanently or indefinitely." *See Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986). Indeed, Plaintiff does not even attempt to make this showing, which "may be established by factors such as: **current** residence; voting registration and practices; location of personal and real property; location of brokerage and bank accounts; location of spouse and family; membership in unions and other organizations; place of employment or business; driver's license and automobile registration; and payment of taxes." *Youn Kyung Park . v. Holder*, 572 F.3d 619, 624-25 (9th Cir. 2009) (emphasis added). Plaintiff, who has known Mr. Edelman for decades, offers no such facts with respect to any of these factors, as is his burden. Domicile is not decided by speculation and alleged facts showing that an individual once -- over thirty years ago -- resided in California.

Nor does Plaintiff dispute several key facts, all of which demonstrate a complete absence of any current California presence or an intent to "remain" there. For instance, Edelman (1) has not lived in California since at least 1990; (2) has never filed a lawsuit in California; (3) does not own property in California; (4) currently lives outside the United States and has done so for decades; and (5) has every intention of continuing to reside abroad permanently. *See* Edelman Dec. ¶¶ 2-6.

Based on the undisputed facts, Edelman is clearly not "at home" in California. *See Lezlie J. Gunn v. Hans-Peter Wild & Does 1-10,* 2020 U.S. Dist. LEXIS 161081,

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT
FOR LACK OF PERSONAL MATTER JURISDICTION

at *9 (C.D. Cal. June 11, 2020) ("Because Wild is a resident of Switzerland and intends to remain in Switzerland, he is not "at home" in California.") (Selna, J.)

### 3. Plaintiff Cannot Demonstrate General Jurisdiction Under the "Continuous And Systematic" Standard Applicable To Corporations

Plaintiff alternatively argues that, apart from domicile, he can establish general jurisdiction over Edelman based on additional alleged contacts to California. Opp. at 17. Plaintiff cites no authority that factors unrelated to domicile are even relevant to the general jurisdiction analysis for individuals. And while the Supreme Court still applies a "continuous and systematic" standard to corporations, *see Daimler*, 571 U.S. at 761, nothing Plaintiff argues or adduces suffices to satisfy this extremely onerous standard.

The only "evidence" Plaintiff purports to offer is: (1) the alleged driver's license that expired in 2017; (2) the alleged tax lien filed in 1993; (3) lease payments for office space in which Mr. Edelman never once set foot; (4) ownership of a film production company; (5) and limited travel to California. *See* Opp. at 17-19. The central problem with this "evidence" is that *Daimler* clarified that such alleged contacts have no application to general jurisdiction. The relevant inquiry is not whether the defendant's "in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [him] essentially at home in the forum State." *Daimler*, 571 U.S. at 761.

As discussed above, an appraisal of Edelman's alleged activities clearly demonstrates that he is not "at home" in California. A few additional sporadic contacts such as limited travel and an alleged business in California do not alter that conclusion. For instance, in *BNSF Railway v. Tyrrell*, 137 S. Ct. 1549 (2017), the Supreme Court rejected the exercise of general jurisdiction over a foreign corporation with far greater contacts to the forum state than alleged here. Even though BNSF had "over 2,000 miles of railroad track and more than 2,000 employees in Montana," the

10

Supreme Court cautioned that "'the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts.'" *Id*. at 1559 (quoting *Daimler*, 571 U.S. at 139 n.20). "Rather, the inquiry 'calls for an appraisal of a corporation's activities in their entirety'; '[a] corporation that operates in many places can scarcely be deemed at home in all of them.'" *Id*. Thus, the U.S. Supreme Court found that BNSF, which was not incorporated in Montana and does not maintain its principal place of business in Montana, was not subject to general personal jurisdiction in Montana because BNSF was not "so heavily engaged in activity in Montana 'as to render [it] essentially at home' in that State." *Id*. The same applies to Mr. Edelman, whom Plaintiff repeatedly asserts -- in court documents -- "resides in London."

### C.  Plaintiff Effectively Concedes There Is No Specific Jurisdiction Over His Tort And UCL Claims

"When a plaintiff relies on specific jurisdiction, the plaintiff must establish that "jurisdiction is proper for ***each claim*** asserted against a defendant." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (emphasis added). Causes of action sounding in tort and causes of action sounding in contract undergo a different analysis under the first prong of the Ninth Circuit's specific jurisdiction test. *Id.* at 1212-14. For claims sounding in tort, a court applies the "purposeful direction" test. *Id*. at 1212 .

Plaintiff does not even attempt to apply and argue the purposeful direction test for his numerous tort and UCL claims. Accordingly, Plaintiff cannot possibly satisfy his burden to establish that there is specific jurisdiction over those claims. S*ee Waziri v. Waziri*, No. 15-CV-04822-JSC, 2016 U.S. Dist. LEXIS 7837, at *9 (N.D. Cal. Jan. 22, 2016) ("Given that it is Plaintiff's burden to establish jurisdiction, Plaintiff's failure to address the issue means Plaintiff has not met his burden and the motion to dismiss must be granted."); *Kroeger v. Vertex Aero LLC*, No. CV 20-3030-JFW(AGRX), 2020 U.S. Dist. LEXIS 117323, at *8 (C.D. Cal. June 30, 2020) (plaintiff's concedes arguments in motion to dismiss by failing to address them in opposition brief ).

Nor could Plaintiff possibly satisfy the purposeful direction test. "Under this test, a defendant purposefully directed his activities at the forum if he: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id*. Neither the Complaint nor the Opposition identify any conduct that meets all three of the above elements. A targeted act must be "targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012). No aspect of Edelman's allegedly tortious conduct could have possibly been directed towards California, or otherwise caused harm in that state, because Plaintiff is not a citizen of California.

### D.  Plaintiff Fails To Satisfy His Burden Of Demonstrating There Is Specific Jurisdiction Over His Contract Claims

Courts apply the "purposeful availment" test to determine whether there is specific jurisdiction over a contract claim. The central inquiry under this test is whether the defendant has "purposefully availed himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Picot*, 780 F.3d at 1212. Plaintiff's Opposition confirms that he has no real response to the Supreme Court's decisions governing specific jurisdiction for contract clams. Indeed, Plaintiff completely ignores three key controlling Supreme Court cases: (i) *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985); (ii) *Walden v. Fiore*, 571 U.S. 277 (2014); and (iii) *Bristol-Meyers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017).

### 1.  Under Burger King, The Court Must Examine The "Business Reality" Behind The Parties' Agreement, Not Merely Where The Parties "Negotiated" The Agreement

"[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008). In fact, a defendant's "random, fortuitous, or attenuated" contact with the forum state

12

paired with a contract does not create sufficient minimum contacts to subject the defendant to personal jurisdiction. *Picot*, 780 F.3d at 1213 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In addition, that "a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract." *Picot*, 780 F.3d at 1213.

When a personal jurisdiction dispute turns on a contractual relationship, the Supreme Court's decision in *Burger King* "guides [the] analysis." *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). In *Burger King*, the franchisor sued a Michigan franchisee in Florida, where the franchisor was headquartered, for breach of the franchise agreement. 471 U.S. at 466-68. The Court held that because the franchisor and franchisee had agreed to an ongoing business relationship with foreseeable consequences in Florida, the franchisee was amenable to suit there. The franchise agreement contemplated a long-term relationship between the parties and "continuing and wide-reaching contacts with Burger King in Florida." *Id*. at 480.

Critical to the Court's holding was "the business reality behind the particular contract at issue." *See Glob. Commodities Trading Grp.*, 972 F.3d at 1108 . The Court in *Burger King* wrote:

> [W]e have emphasized the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."

471 U.S. at 479

"Following the lead of the Court in *Burger King*, we have emphasized that courts must evaluate the parties' entire course of dealing, not solely the particular contract or tortious conduct giving rise to the claim, when assessing whether a defendant has minimum contacts with a forum." *Glob. Commodities Trading Grp.*,

972 F.3d at 1108. "In cases where we have held that a contract between a forum resident and a non-resident did not give rise to specific jurisdiction in the forum, we have done so because the business relationship between the parties was fleeting or its center of gravity lay elsewhere." *Id.*

> 2. *The Parties' Alleged Contractual Relationship, Ongoing Contractual Performance, And Course Of Dealing All Occurred Outside Of California*

Under *Burger King*'s approach, "the business reality" behind the Joint Alleged Venture -- in which no party is a California resident -- involved no relevant conduct in California. Rather, the future consequences, alleged terms, and course of dealing for the Alleged Joint Venture all concerned the pursuit of oil and gas opportunities in Nevada, Canada, Europe, and Mexico. And all the alleged damages flow from alleged breaches occurring in Europe and Mexico, and involved Plaintiff's claimed entitlement to ownership or profit distribution in foreign entities. Indeed, according to Plaintiff, a Dutch court has already issued a judgment ordering that Plaintiff be granted 25% ownership in one Dutch entity,[1] and that Plaintiff be appointed managing director of another Dutch entity. *See* New York Compl. ¶ 49. The "center of gravity" for the Alleged Joint Venture clearly lays elsewhere.

In substantially similar cases, courts across the country have time and again rejected the assertion of personal jurisdiction where the parties' contractual performance largely occurred out-of-state. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988) (no purposeful availment where "no authorized agents of [defendant] were alleged to have performed or executed any portion of the contract in California"); *Skanda Grp. of Indus., LLC v. Capital Health Partner, LLC*, 2020

---

[1] In this action, Plaintiff simply ignores the Dutch court's alleged judgment, and asks this Court to issue overlapping and inconsistent relief -- that Plaintiff be awarded 50% of the very same entity. *See* Compl. Prayer for Relief ¶ 4 ("For an order directing Edelman to issue 50% of the shares of Lanius to Mr. Buscher.").

14

U.S. Dist. LEXIS 240314, at *15 (C.D. Cal. Dec. 21, 2020) (no purposeful availment where "defendant did not perform any part of the Agreement in California"); *Smartstop Self Storage Operating P'ship L.P. v. Can-Dev, ULC*, 2015 U.S. Dist. LEXIS 189631, at *8-9 (C.D. Cal. Oct. 26, 2015) (no personal jurisdiction where "the contracts at issue only contemplated performance by Can–Dev outside of California . . . and . . . none of Can–Dev's contractual obligations required it to come to California"); *Picot*, 780 F.3d at 1212 (finding no personal jurisdiction where an alleged oral contract contemplated that the defendant would "perform the majority of his work" outside California); *Bowen v. Lancaste*r, 2008 U.S. Dist. LEXIS 39423, at *3 (C.D. Cal. Apr. 30, 2008) (parties' negotiations were insufficient to establish specific jurisdiction in California when the object of those negotiations was to create a Nevada corporation to transact business in Nevada); *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 281-82 (4th Cir. 2009) (no personal jurisdiction in Virginia over breach of contract claim despite Virginia choice-of-law clause, because work subject to agreement would have been performed in India, and the defendant did not otherwise have substantial contacts with Virginia related to agreement); *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (no personal jurisdiction where "defendant did not perform any of its obligations in [that state], the contract did not require performance in [that state], and the contract is centered outside of [that state]").

3. *The Alleged Negotiation Occurred In California Based On The Happenstance Of Where Edelman's Brother -- An Unrelated Third Party -- Was Located*

While Plaintiff alleges that the parties negotiated the Alleged Joint Venture in California, that activity could equally have been accomplished anywhere else in the world. Indeed, the alleged negotiations occurred in California for reasons that had nothing to do with the Alleged Joint Venture. Rather, Edelman happened to be in California at the time, to see his dying brother. "But a defendant's relationship with

15

a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286 (2014). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.*

The Ninth Circuit's decision in *Morrill v. Scott Financial Corp.*, 873 F.3d 1136 (9th Cir. 2017) is instructive. There, plaintiffs, residents of Arizona, argued that Nevada residents were subject to personal jurisdiction in Arizona because they engaged in abusive litigation tactics in Arizona. The Ninth Circuit held there was no personal jurisdiction because "the forum state was only implicated by the happenstance of Plaintiffs' residence; if other states had procedural rules similar to those that were in place in Arizona . . . and Plaintiffs resided in one of them, they would have experienced this same [alleged tortious conduct] in California, or Mississippi, or wherever else they might have [resided]." *Id.* at 1146.

Similarly, that the negotiation of the Alleged Joint Venture purportedly occurred in California was pure "happenstance." *See id.* Had Edelman's brother resided in another state, the same alleged negotiations would have occurred there. Neither Plaintiff nor Edelman resided in California, no relevant aspect of the Alleged Joint Venture was performed there, and nothing about the Alleged Joint Venture required negotiations to take place in California. "[I]t is the defendant, not . . . third parties, who must create contacts with the forum State." *Walden*, 571 U.S. at 291. Further, "physical entry that is merely incidental to an out-of-state transaction does not satisfy the constitutional minimum contacts requirement." *Morrill*, 873 F.3d at 1147. Two non-residents of California conducted a few days of negotiation in California. That random, fortuitous occurrence does not provide a basis for specific jurisdiction here.

4.     *Unconnected Business Activities Are Entitled To No Weight In The Specific Jurisdiction Analysis*

Two fundamental principles of specific jurisdiction underscore why Plaintiff cannot meet his burden of satisfying the purposeful availment test. First, *Walden* holds that "[f]or a State to exercise jurisdiction consistent with due process, the defendant's "suit-related conduct must create a substantial connection with the forum [s]tate." 571 U.S. at 284. Second, *Bristol-Meyers* holds that, "[w]hen there is no such connection, specific personal jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state." 137 S. Ct. at 1781. Relying on a decision that pre-dates *Walden* and *Bristol-Meyers* by more than 20 years, Plaintiff argues he can demonstrate satisfaction of the purposeful availment test by showing that Edelman "has taken deliberate action within the forum state."  Opp. at 7. Plaintiff then goes on to identify two purported forms of "deliberate action:" (1) negotiating their alleged oral agreement; and (2) renting office space, hiring employees, conducting operations, and participating in meetings within California.  *Id.* But Plaintiff does not explain how either of these alleged actions are sufficiently suit-related under *Walden* and *Bristol-Meyers*.

As explained above, under the Supreme Court's framework in *Burger King*, the location in which a few days of alleged negotiation occurred cannot, by itself, provide the basis for personal jurisdiction. And under *Walden* and *Bristol-Meyers*, conduct unrelated to the underlying claims cannot provide a basis for specific jurisdiction either.  Plaintiff alleges that Mr. Edelman rented office space between November 2012 and December 2013 and paid a California "employee" of the Alleged Joint Venture. Opp. at 9. But this alleged conduct has nothing do with Plaintiff's claims. Indeed, the alleged conduct is so completely peripheral to the case that the Complaint does mention -- not even once -- these purported activities.

Under *Bristol-Myers* Court, the "relevant conduct" that gives rise to the specific claims against the specific defendant must have occurred in the forum, and this

17

standard is not met when "all the conduct giving rise" to the specific claims at issue "occurred elsewhere." *Id.* at 1782 (emphasis added). Here, all of the relevant alleged conduct -- Edelman's purported breaches and Plaintiff's alleged damages -- occurred outside of California and involve exclusively foreign entities, including Dutch companies subject to Plaintiff's action in the Netherlands, and Mexican companies subject to Plaintiff's New York action. *See* Compl. ¶¶ 325-27.

Plaintiff's arguments concerning irrelevant, in-forum alleged contacts impermissibly "'elide[] the essential difference between case-specific and general jurisdiction.'" *Barone v. Intercontinental Hotels Grp. PLC*, 2016 U.S. Dist. LEXIS 66851, at *19 (N.D. Cal. May 20, 2016). *Bristol Myers* and *Walden* squarely apply here, and their holdings bar the exercise of personal jurisdiction over Plaintiff's claims.

> 5.    *Plaintiff's Claims Do Not Arise Out Of Forum Activity*

Even if Plaintiff could satisfy the first prong of the purposeful availment test -- and he cannot -- Plaintiff fails the second prong, which asks whether plaintiff's claims arise out of activity conducted in the forum state. *Schwarzenegger*, 374 F.3d at 802. Plaintiff argues he satisfies this prong based on but-for causation -- asserting that but for Edelman's negotiation in California, Plaintiff's claims would not have arisen. *See* Opp. at 10. Plaintiff is wrong.

"But-for" causation implies a "necessary logical condition." *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 63 (2007); *Greene v. Doruff*, 660 F.3d 975, 978 (7th Cir. 2011) (explaining that but for causation is equivalent to a "necessary condition," which "is something that has to happen for something else to happen"). Thus, for instance, necessary conditions or "but-for causes" of Plaintiff's contract claims include that Plaintiff and Edelman crossed paths in the first place, and then secondarily, that they (purportedly) formed the Alleged Joint Venture. The first condition did not occur in California, and the second condition did not need to occur in California, and only did so as a matter of happenstance.

Plaintiff alleges that he first met Edelman in Russian in 1995. Compl. ¶ 39. Plaintiff goes on to allege that Edelman has been approaching Plaintiff with potential business opportunities in various international locations since 2003, and that the two even own property together in Austria. Compl. ¶¶ 55-65, 66. Under Plaintiff's narrative, the parties had already known each other for decades and were headed towards the negotiation of an eventual, overseas-based partnership in some form. But for Plaintiff and Edelman meeting one another in 1995, and continuing to develop a relationship over the course of the next two decades in various international locations, Plaintiff's claims would not have arisen.

The same cannot be said for alleged negotiations in California. As explained above, no aspect of the Alleged Joint Venture's operations or objectives necessitated that the parties meet in California. Had Edelman's brother resided in Nevada, Arizona, or some other state, the alleged negotiations would have taken place there. Because negotiations occurring specifically in California were not a necessary condition for Plaintiff's claims, Plaintiff's claims do not "arise out" of California for purposes of the purposeful availment test.

### 6.   It Would Be Unreasonable To Force Mr. Edelman To Litigate In California

Finally, assertion of jurisdiction on these facts would not be reasonable. Applying the seven factors from *Bancroft & Masters, Inc. v. Augusta Nat'l*, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000), this conclusion is abundantly clear: (1) Mr. Edelman has engaged in no "purposeful interjection" into California -- he is alleged to have, from Europe, breached obligations under a joint venture that operates in Mexico and Europe, (2) Mr. Edelman, much of his evidence, and most of the witnesses are located in Europe and Mexico; (3) as the briefing on this motion to dismiss illustrates, this case involves numerous issues of Dutch and British Virgin Islands corporate law, and resolution of this case would interfere with Dutch sovereignty; (4) California has no strong interest in resolving a dispute between two non-residents over their non-

19

California "joint venture" that is already subject to an alleged judgment by a Dutch court (5) it would be most efficient to address Plaintiff's claims in connection with the existing and ongoing litigation in the Netherlands; (6) because the Alleged Joint Venture does virtually all of its business in Europe and Mexico, and none in California, this state is not an important forum to provide relief; and (7) European courts are a suitable forum and, according to Plaintiff, have already issued Plaintiff relief that overlaps with what Plaintiff seeks here.

To hale Mr. Edelman into a California court simply because he allegedly spent a few days "negotiating" the Alleged Joint Venture in California would not comport with fair play and substantial justice.

## III.  JURISDICTIONAL DISCOVERY IS UNWARRANTED

As a threshold matter, Plaintiff must have a basis for asserting jurisdiction -- not the hope for a fishing expedition -- before filing this action. Thus, this Court need not permit "even limited discovery" where, as here, the "claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants." *Getz v. Boeing Co*., 654 F.3d 852, 860 (9th Cir. 2011) (citation and quotations omitted); *see also Boschetto*, 539 F.3d at 1020 (finding district court did not abuse its discretion in denying jurisdictional discovery when request was "based on little more than a hunch that it might yield jurisdictionally relevant facts"). The fact that plaintiffs "'believe' that discovery will enable them to demonstrate sufficient California business contacts to establish the court's personal jurisdiction" is insufficient to justify jurisdictional discovery. *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986).

Jurisdictional discovery is not warranted here because Plaintiff's theory of personal jurisdiction is invalid and he has not alleged a single fact that, if proven, would support the exercise of jurisdiction over Mr. Edelman. *See Yamashita v. LG Chem, Ltd*., No. 20-cv-00129, 2020 U.S. Dist. LEXIS 136825, at *33 (D. Haw. July 31, 2020) (denying request for jurisdictional discovery; "There are some jurisdictional

20

discovery motions that are close calls. This is not one of them."). Plaintiff's theory is that alleged connections to California predating the parties' dispute by several years, or decades, support jurisdiction. As explained above, those alleged connections are irrelevant to the jurisdictional inquiry, and thus no amount of discovery into an expired driver's license or a thirty-year old tax lien will provide a basis for jurisdiction. Plaintiff further argues that discovery is necessary to address "inconsistencies" in Mr. Edelman's assertion that he has not lived in California for thirty years. But there is no inconsistency. Plaintiff himself alleges the very same fact multiple times.

In any event, regardless of Plaintiff's theory, he "has not articulated any of the specific facts he hopes to elicit from further discovery; any reason to suspect these facts sought exist; or how these sought-after facts will enable him to oppose Mr. Edelman's motion to dismiss." *Id*. at *34. "A request for discovery 'based on little more than a hunch that it might yield jurisdictionally relevant facts' is not enough." *Id*. (quoting *Boschetto*, 539 F.3d at 1020). Plaintiff merely argues that discovery is warranted to "clear up" supposed deficiencies in Mr. Edelman's declaration regarding domicile. But Plaintiff himself asserts that Mr. Edelman "resides in London, England." Further, "simply stating that facts are disputed" and that a defendant "offers insufficient evidence for one of its arguments does not assert that discovery will yield relevant facts at all." *Reynolds v. Binance Holdings Ltd.*, -- F. Supp. 3d --, 2020 U.S. Dist. LEXIS 155227, at *24 (N.D. Cal. Aug. 26, 2020).

## IV. CONCLUSION

For all these reasons, respectfully, the Court should dismiss the Complaint for lack of personal jurisdiction.

Dated: February 1, 2020

**BAKER McKENZIE LLP**

By:   _/s/ Perrie M. Weiner_

Perrie M. Weiner
Barry J. Thompson
Aaron T. Goodman
Attorneys for Defendant
Douglas Edelman

21